IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JOSE ROJAS-TAPIA**, <br><br> Petitioner, <br><br> v. <br><br> **UNITED STATES OF AMERICA**, <br><br> Respondent. | **Civil No.**: 17-1759 (DRD) <br> Related Crim. Case Nos. 99-309 (DRD); <br> 99-385 (PG) |

### OPINION AND ORDER

Pending before the Court is Mr. José Rojas-Tapia's ("Petitioner") *Motion to Vacate Sentence Under 28 U.S.C. § 2255* ("*Motion to Vacate*"). *See* Civil Case No. 17-1759, Docket No. 1. Petitioner argues that his sentence and corresponding convictions must be vacated since the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*") invalidated the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii) after determining that it was unconstitutionally vague. Furthermore, Petitioner asserts that *Johnson II*'s reasoning should be applied to also invalidate the residual clauses contained in 18 U.S.C. § 924 (c) and the "pre-*Booker*" Career Offender Guidelines which were used to sentence and convict him as well. After careful examination, the Court hereby **DENIES** Petitioner's *Motion to Vacate*.

### I.     Relevant Background

For events that took place on September 2, 1999, Petitioner was charged for robbing postal offices and placing his victims' lives in jeopardy through the use of dangerous weapons. To that end, on September 29, 1999 a Grand Jury returned a six-count indictment against Petitioner in Criminal Case No. 99-309. Specifically, Petitioner was charged for: one count of aiding and

abetting in an assault on postal employees with the intent to rob, jeopardizing lives in the commission of the offense by using dangerous weapons in violation of 18 U.S.C. § 2114(a) (Count One); two counts of aiding and abetting in using and carrying firearms during and in relation to the crime charged in Count One, in violation of 18 U.S.C. §§ 924(c) (Counts Two and Three); one count of aiding and abetting in possessing firearms in a federal facility, in violation of 18 U.S.C. §§ 930(b) (Count Four); one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count Five); and one count of aiding and abetting in attempting to kill police officer Luis Castro in the course of possessing firearms in a federal facility, in violation of 18 U.S.C. §§ 930(c) (Count Six). *See* Criminal Case No. 99-309 at Docket Nos. 16 and 35.

Later, on December 27, 1999 a second indictment was filed against Petitioner. *See* Criminal Case No. 99-385 at Docket No. 7. The charges in this case were related to another separate postal office robbery that occurred on August 10, 1999. Specifically, Petitioner was charged for the following: one count of aiding and abetting in an assault on postal employees with the intent to rob, jeopardizing lives during the commission of the offense by using dangerous weapons in violation of 18 U.S.C. §§ 2114(a) (Count One); two counts of aiding and abetting in using and carrying firearms during and in relation to the crime charged in Count One in violation of 18 U.S.C. §§ 924(c) (Count Two and Three); one count of aiding and abetting in possessing firearms in a federal facility in violation of 18 U.S.C. §§ 930(b) (Count Four); and one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g) and 924(e) (Count Five). *Id.*

The referenced cases were eventually consolidated. Petitioner plead guilty to all counts on October 20, 2000. *See* Criminal Case No. 99-309 at Docket Nos. 135 and 136. Consequently, on October 10, 2001, the Court in Criminal Case No. 99-309 entered a *Judgment* sentencing Petitioner to the following imprisonment terms: 262 months as to Count One; 60 months as to Count Four

and 10 months as to Count Five. *See* Criminal Case No. 99-609, Docket No. 204 at 2.[1] Furthermore, as additional imprisonment terms, the Court imposed 300 months as to Count Two and 300 months as to Count Three; said terms were to be served concurrently with each other.[2] *Id*. As to Criminal Case No. 99-385, on the same date, the Court sentenced Petitioner to 262 months as to Count One, 60 months as to Count Four, and 180 months as to Count Five, all to be served concurrently with each other and concurrently with Counts One, Four and Five in Criminal Case No. 99-309. *See* Criminal Case No. 99-385, Docket No. 99 at 2. In this case, the Court also sentenced Petitioner to 84 months for Count Two and 120 months for Count Three, to be served consecutively to the term of imprisonment imposed in Criminal Case No. 99-309. *Id*. at 3.

## II.     Standard of Review

Pursuant to § 2255, a prisoner prevails on his motion to vacate, set aside, or correct a sentence if the petitioner proves one of the following: (i) "the sentence was imposed in violation of the Constitution or laws of the United States," (ii) "the court was without jurisdiction to impose such sentence," (iii) "the sentence was in excess of the maximum authorized by law," or (iv) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). *See*, *also*, <u>Hill v. United States</u>, 368 U.S. 424, 426-427 (1962); <u>Ellis v. United States</u>, 313 F.3d 636, 641 (1st Cir. 2002).

## III.    Discussion

In his *Motion to Vacate*, Petitioner contends that, pursuant to the Supreme Court's decision in *Johnson II* he: (A) no longer qualifies as an Armed Career Criminal because his prior convictions are not "violent felonies" under the ACCA's force clause; (B) is not guilty of Counts

---

[1] The Court ordered that the imprisonment terms in Criminal Case No. 99-309 for counts 1, 4, and 5 were to be served concurrently with each other and concurrently with counts 1, 4 and 5 in Criminal Case No. 99-385.
[2] Petitioner filed a notice of appeal as to said *Judgments* and, eventually, the First Circuit vacated "the drug testing and treatment conditions of supervised release" and remanded the case to the District Court for proceedings consistent with its ruling and its determination pertaining to said matter in *United States v. Melendez-Santana*, 353 F.3d 93 (1st Cir. 2003). On February 1, 2005, *Amended Judgments* were entered in both cases. *See* Criminal Case No. 99-309 at Docket No. 268 and Criminal Case No. 99-385 at Docket No. 99.

Two and Three of both criminal cases since they no longer qualify as a "crime of violence" under 18 U.S.C. § 924(c)(3)(B)'s residual clause; and (C) no longer qualifies for an enhanced base offense level of 26 under USSG 2K2.1(a)(1), because absent the residual clause in USSG § 4B1.2(a)(2), his prior convictions are no longer "crimes of violence." *See* Docket No. 1 at 1-2.

### A. ACCA

The ACCA mandates a minimum sentence of fifteen years for qualifying defendants who violate Section 922 (g). *See* 18 U.S.C. § 924 (e)(1). A defendant qualifies under this section if he "has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1).

On the other hand, a "violent felony" signifies

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another […][3]

18 U.S.C. § 924(e)(2)(B). Furthermore, the Supreme Court has stated that the term "physical force" "means violent force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010). "Thus, the question is whether the predicate offense contains as an element violent force capable of causing physical pain or injury." United States v. Starks, 861 F.3d 306, 314 (1st Cir. 2017).

The Supreme Court has established a "categorical approach" to determine whether a defendant's prior conviction satisfies the force clause. *See* Taylor v. United States, 495 U.S. 575,

---

[3] Pursuant to *Johnson II*, the residual clause of Section 924 (e)(1) -which encompasses any felony that "involves conduct that presents a serious potential risk of physical injury to another"- was declared unconstitutional on the basis of vagueness. Johnson v. United States, 135 S. Ct. 255 (2015).

4

588 (1990). Under the categorical approach, the sentencing court is required "to look only to the fact of conviction and the statutory definition of the prior offense". Taylor v. United States, *supra*, at 588. "This means that a prior conviction will either count or not based solely on the fact of conviction rather than on facts particular to the individual defendant's case." United States v. Faust, 853 F.3d 39, 50 (1st Cir. 2017).[4]

Further, the Court must note that "[t]he categorical or modified categorical approach 'applies not just to jury verdicts, but also to plea agreements.'" *United States v. Mohamed*, 920 F.3d 94, 101 (1st Cir. 2019) (*citing* Descamps v. United States, 570 U.S. 254, 262-63 (2013)).

### B. Petitioner's federal conviction for aiding and abetting a postal robbery qualifies as a "crime of violence" under the force clause of the ACCA.

Petitioner contends that, pursuant to *Johnson II*, the residual clause of 18 U.S.C. § 924 (c) ("Section 924 (c)") should be deemed invalid. Consequently, he reasons that, absent said residual clause, the underlying criminal offense -Count One (aiding and abetting a postal robbery)- to Counts Two and Three of both criminal cases no longer qualifies as a "crime of violence" under Section 924 (c).

In its relevant part, Section 924 (c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall face an additional punishment provided for such crime of violence or drug trafficking crime. 18 U.S.C. § 924 (c).

---

[4] *See*, *also*, United States v. Holloway, 630 F.3d 252, 256 (1st Cir.2011) ("we may consider only the offense's legal definition, forgoing any inquiry into how the defendant may have committed the offense."); United States v. Whindleton, 797 F.3d 105, 108 (1st Cir. 2015).

5

After Petitioner filed its *Motion to Vacate* -and the government filed its corresponding *Opposition*- the Supreme Court ruled that the residual clause contained in Section 924 (c) is unconstitutionally vague. *See* United States v. Davis, 139 S.Ct. 2319, 2336 (2019). Therefore, the Court must determine whether the underlying offense related to Counts Two and Three qualifies as a "crime of violence" under the force clause of Section 924 (c).

Specifically, the charge for aiding and abetting a postal robbery was made under 18 U.S.C. § 2114 (a) which states:

> (a) Assault.--A person who assaults any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

Essentially, Petitioner contends that violating 18 U.S.C. § 2114 (a) does not require the use, attempted use, or threatened use of violent and intentional force. In opposition, the Government argues that Petitioner's admitted facts surrounding the aiding and abetting of the postal robbery by accepting that he: (1) "put his victims' lives in jeopardy by the use of dangerous weapons"; and (2) "shot at police officers, injuring one of them, during the Levittown robbery and pointed firearms at the Sabana Seca [post office] employees". Case No. 17-1759, Docket No. 10 at 11. Said contentious are easily corroborated by reviewing the *Plea Agreement* executed between the Government and Petitioner. To that end, the Court notes that as to Criminal Case No. 99-309 the "Version of Facts" subscribed by Petitioner was as follows:

> Specifically, as to criminal case number 99-309 (CCC), on or about September 2, 1999, the defendants Jose Rojas-Tapia aka, "Goldy" (ROJAS), Luis A1berto Pastrana-Cancel (PASTRANA), Jose Alberto Maldonado-Carrillo

(MALDONADO), Carlos Rodriguez (RODRIGUEZ), Dennis Castro-Rodriguez (CASTRO) and others, aiding and abetting each other did assault Levittown Postal employees who had lawful charge, custody and control of United States currency and other property of the United States, with the intent to rob, steal, and purloin said currency, and other property of the United States and while committing said offense, did put their lives in jeopardy by the use of dangerous weapons, that is, a 9mm pistol and a .40 caliber semi-automatic Glock pistol,
model 23, bearing serial number BVY178US and an arsenal semi-automatic AK-47 type of assault rifle, model SA 93, caliber 7.62x39, bearing serial number BA36021. All in violation of Title 18, United States Code, Sections 2114, 922(g), 924 (c) and (e), 930(b), and 2. ROJAS, PASTRANA, MALDONADO, RODRIGUEZ and CASTRO did also intentionally attempt to kill Luis Castro, a Puerto Rico Police officer and other officers, in the course of possessing firearms in a federal facility, as previously described, all in violation of Title 18, United States Code, Sections 930(c) and 2.

The defendants planned the robbery of the Levittown Post Office and prior to arriving there, they prepared a vehicle with tinted windows at the residence of RODRIGUEZ, as well as had a switch vehicle available. Specifically, on the afternoon of September 2, 1999, ROJAS and the above named defendants attempted to rob the Levittown Post Office of thirty-six thousand, four hundred and seventy-eight dollars ($36,478.00). Access inside the rear door of the post office was gained; as PASTRANA was dressed in a postal uniform, acquired through the use of ex-postal service worker RODRIGUEZ' postal identification. The defendants were armed and threatened the lives of and/or posed a threat to employees, the general public and children in a school next to the post office. Thus, lives were threatened not only inside the Post Office, but outside as well, and, in particular, when the defendants exited the post office and engaged -in a gun battle with several local police officers. Luis Castro, a local police officer was injured. ROJAS, along with PASTRANA, ran into the home of an elderly person where she was caring for a newborn grandson and a college age grandson and held them hostage, at gunpoint, until the police arrived and rescued them.

Docket No. 135, Version of Facts at 1-2.[5] Considering the referenced admitted facts, the

Government reasons that the robbery in the instant case necessarily involved the use, attempted

---

[5] Furthermore, the Court notes that the *Indictment* specifically stated the following as to Count one:

On or about September 2, 1999, in the District of Puerto Rico, and within the jurisdiction of this Court, defendants, **[1] LUIS ALBERTO PASTRANA-CANCEL, [2] JOSE ALBERTO MALDONADO-CARRILLO, [3] JOSE M. ROJAS-TAPIA, [4] CARLOS RODRIGUEZ** and others to the Grand Jury unknown, aiding and abetting each other, did assault employees, Nancy E. Rosa-Diaz, Rafael J. Maldonado, Iris Reyes, and Rafael Medina-Hernandez of the Levittown Postal Service having lawful charge, custody and control of United States currency, and other property of the United States, with intent to rob, steal and purloin said currency, and other property of the United States and while committing said offense, did put their lives in jeopardy by the use of dangerous

use, or threatened use of physical force, making it a "crime of violence" under Section 924 (c)'s force clause. Although the First Circuit has yet to determine whether 18 U.S.C. § 2114 (a) is a crime of violence, the Court notes that various other Circuits that have already decided the matter.

First, it has been determined that said statute is "divisible".[6] Specifically, the Circuit Courts have determined that 18 U.S.C. § 2114 (a) carries a "separate aggravated offense" which includes the wounding **of the victim or putting the victim's life in jeopardy by the use of a dangerous weapon**. *See*, *e.g.*, Knight v. United States, 936 F.3d 495, 498–99 (6th Cir. 2019). The Court finds that the same reasoning should be applied to the instant case.[7]

Second, after applying the corresponding "modified categorical approach", the Fourth, Sixth, Seventh and Eleventh Circuits have concluded that when this "separate aggravated offense" is present, 18 U.S.C. § 2114 (a) is to be regarded as a "crime of violence" pursuant to Section 924 (c)'s force clause. *See*, *e.g.*, In re Watt, 829 F.3d 1287 (11th Cir. 2016); United States v. Enoch, 865 F.3d 575 (7th Cir. 2017); Knight v. United States, *supra*; United States v. Bryant, 949 F.3d 168, 180 (4th Cir. 2020). The Court finds that said conclusion should be applied in the instant case.

---

weapons, that is, a 9mm pistol and .40 caliber semi-automatic Glock pistol, model 23, bearing serial number BVY17US, and an arsenal semi-automatic AK-47 type of assault rifle, model SA 93, caliber 7.26 x 39, bearing serial Number BA360217. All in violation of Title 18, United States Code, Section 2114 and 2.

Criminal Case No. 99-309, Docket No. 16 and 35.

[6] The term "divisible" is used since "[a] single statute may list elements in the alternative, and thereby define multiple." Mathis v. United States, 136 S. Ct. 2243, 2249, 195 L. Ed. 2d 604 (2016). When faced with these types of statutes, the Courts employ a "modified" categorial approach. To that end, "sentencing court looks to a limited class of documents (for example, **the indictment**, jury instructions, or **plea agreement** and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (emphasis provided). "The court can then compare that crime, as the categorical approach commands,' with the pertinent ACCA definitions." United States v. Mulkern, 854 F.3d 87, 91 (1st Cir. 2017).

[7] The Court notes that, conveniently, Petitioner decided not to cite the complete language of 18 U.S.C. § 2114 (a) complete; that is, Petitioner left out the section of the statute that the Circuit Courts have categorized as the "separate aggravated offence".

As previously referenced, the First Circuit in *United States v. Taylor* determined that a "deadly or dangerous weapon is 'any object which, as used or attempted to be used, may endanger the life of or inflict great bodily harm on a person.'" United States v. Taylor, 848 F.3d 476 (1st Cir. 2017) (*citing* United States v. Whindleton, 797 F.3d 105, 114 (1st Cir. 2015)) at 493–494. Consequently, "the element of a dangerous weapon imports the 'violent force' required by Johnson into the otherwise overbroad simple assault statute… [T]his enhancement necessarily requires the use or threat of force capable of causing physical pain or injury to another." *Id*. Consequently, by applying the reasoning in *Taylor*, a conviction under the "separate aggravated offense" of 18 U.S.C. § 2114 (c) is a "crime of violence" under Section 924 (c)'s force clause.

In the instant case, the record shows that Petitioner's plea agreement was accepted with the Government's version of facts. *See*, Criminal Case No. 99-309, Docket No. 135; Case No. 99-385, Docket No. 39. That being the case, it is clear that Petitioner plead guilty to a set of facts that constituted the "separate aggravated offense" of 18 U.S.C. § 2114 (a); that is, in violating said statute, Petitioner placed the lives of postal employees in jeopardy by using dangerous weapons - specifically, a 9mm pistol, a .40 caliber semi-automatic Glock pistol, and a semi-automatic AK-47 type assault rifle. *Id*.[8] Hence, the Court finds that Petitioner's conviction under 18 U.S.C. § 2114 (a) constitutes a "crime of violence" under Section 924 (c)'s force clause which undoubtedly supports Counts Two and Three.

On the other hand, Petitioner contends his conviction under said statute did not qualify under the force clause since he was charged as an "aider and abettor". *See* Case No. 17-1759, Docket No. 1 at 30. However, albeit in the context of different offenses, the First Circuit has determined that "aiding and abetting the commission of a crime of violence is

---

[8] Certainly, Petitioner *Plea Agreement* is one of the documents that may be used by the Courts when employing the "modified categorical approach". *See* Shepard v. United States, 544 U.S. 13, 16 (2005).

9

a crime of violence itself." *See*, *e.g.*, United States v. Garcia-Ortiz, 904 F.3d 102, 109 (1st Cir. 2018), cert. denied, 139 S. Ct. 1208, 203 L. Ed. 2d 232 (2019) ("[W]e therefore hold that because the offense of Hobbs Act robbery has as an element the use or threatened use of physical force capable of causing injury to a person or property, a conviction for Hobbs Act robbery categorically constitutes a "crime of violence" under section 924(c)'s force clause."); United States v. Rodriguez-Torres, 939 F.3d 16, 43 (1st Cir. 2019) ("[f]ederal law … says that a person who aids or abets the commission of a federal crime 'is punishable as a principal."); United States v. Mitchell, 23 F.3d 1, 2–3 (1st Cir. 1994). The Court finds that the same reasoning applies in the instant case; consequently, since the "separate aggravated offense" of 18 U.S.C. § 2114 (a) is a "crime of violence", the "aiding and abetting" conviction against Petitioner constitutes a "crime of violence" in itself.

Pursuant to the above, Petitioner's contention as this matter is meritless.

## C. **Petitioner's prior convictions qualify him as an Armed Career Criminal under the ACCA.**

The record for the instant case reveals that Petitioner had an extensive criminal record under Puerto Rico law. To that end, the *Presentence Report* shows that Petitioner had been sentenced to imprisonment approximately 10 times for violations to: Puerto Rico's Penal Code (robbery, kidnaping, murder, second degree murder, attempted murder, armed carjacking, escape and conspiracy), Puerto Rico's Controlled Substances Law, and Puerto Rico's Firearms Law. *See* Criminal Case No. 99-385, Docket No. 66.[9]

As previously stated, in order to qualify as a Armed Career Criminal under the ACCA, a defendant must possess "three previous convictions ... for a violent felony or a serious drug

---

[9] In performing this analysis, the Court references the *Presentence Report* since a court "may accept *any* undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A).

offense, or both, committed on occasions different from one another." *See* 18 U.S.C. § 924(e)(1). The Court finds that at least three of Petitioner's previous convictions under Puerto Rico law qualify him as an Armed Career Criminal pursuant to the ACCA.[10]

### a. Petitioner was convicted for a serious drug offense pursuant to Puerto Rico Law.

The *Presentence Report* reveals that Petitioner was previously convicted for violating Article 401 of Puerto Rico's Controlled Substances Law. *See* Criminal Case No. 99-385, Docket No. 66 at ¶ 61, Civil Case No. 17-1759, Docket No. 10-1 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. FSC96G0365). Specifically, on July 28, 1996, Petitioner was charged with possession with intent to distribute 256 capsules of cocaine. *Id*.

Article 401 of Puerto Rico's Controlled Substances Law states that "[…] it shall be unlawful for any person knowingly or intentionally: (1) to […] possess with the intent to […] distribute […] a controlled substance." P.R. Laws Ann. tit. 24, § 2401. Furthermore, pursuant to said statute, a violation of Section 2401 carries a maximum term of imprisonment of 20 years. *Id*. On January 14, 1997, Petitioner pled guilty to this charge and was sentenced accordingly. *See* Case No. 17-1759, Docket No. 10-1.[11]

The ACCA defines the term "serious drug offense" as

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46 for which a maximum term of imprisonment of ten years or more is prescribed by law; or (ii) an offense under State law, involving manufacturing, **distributing**, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), **for which a maximum term of imprisonment of ten years or more is prescribed by law**

---

[10] The Court acknowledges that Petitioner argued that most of said convictions under Puerto Rico's Penal Code do not constitute "violent felonies" pursuant to the ACCA's force clause. However, the Court finds that it is not necessary to delve into every single one of Petitioner's prior convictions, since there are at least three of them that qualify as either a "serious drug offence" or a "violent felony" for purposes of the ACCA. Therefore, Court's analysis will focus on these.

[11] The Court notes that Petitioner was also known as Mr. José M. Agosto Rosa. *See, e.g.,* Case No. 17-1759, Docket 10-2.

18 U.S.C.A. § 924 (e) (2) (A) (i)-(ii) (emphasis provided). In his *Motion to Vacate*, Petitioner did not contest that said prior conviction does not qualify as a "serious drug offense" under the ACCA. Consequently, the Government argued that Petitioner waived said defense. *See*, *for example*, United States v. Brown, 945 F.3d 597, 602 (1st Cir. 2019) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")).

Regardless of the possible waiver of Petitioner's defenses as to this matter, the Court finds that Petitioner's conviction under Puerto Rico law for possessing cocaine with the intent to distribute -which carried a maximum penalty of over 10 years of imprisonment- falls squarely under the definition of "serious drug offense" provided by the ACCA.[12] Hence, said conviction under Puerto Rico's Controlled Substances Law counts as a previous conviction for purposes of qualifying him as an Armed Career Criminal pursuant to the ACCA.

### b. *Petitioner was convicted for violent offenses pursuant to Puerto Rico Law.*

#### i. *Murder, Second-Degree Murder and Attempted Murder.*

The *Presentence Report* shows that Petitioner was previously charged, under Article 83 of Puerto Rico's Penal Code, with the murder of a police officer and four attempted murders during events that transpired on or about April 5, 1997. *See* Criminal Case No. 99-385, Docket No. 66 at ¶ 64, Civil Case No. 17-1759 at Docket 10-2 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. KVI97G0094) and 10-3 (*Judgments* entered by the Court of First Instance of Puerto Rico for Criminal Cases Nos. KVI970090, KVI97G0091, KVI97G0092, KVI97G0093). On February 3, 1998, Petitioner pled guilty and was sentenced as a habitual criminal to 99 years for each charge. *Id.*

---

[12] The First Circuit has determined that the "categorial approach" is equally applicable when evaluating controlled substance offenses. *See*, *e.g.*, United States v. Bryant, 571 F.3d 147, 157 (1st Cir. 2009).

Furthermore, the *Presentence Report* shows that Petitioner was charged -as an aider and abettor- with second-degree murder of an individual within the Commonwealth of Puerto Rico's Regional Detention Center on or about May 28 or May 29, 1997. *See* Criminal Case No. 99-385, Docket No. 66 at ¶ 66. Said Report also states that on April 4, 1998 he plead guilty and was sentenced to a prison term of 30 years. *Id*.

Petitioner contends that his "murder, attempted murder, and second-degree murder convictions do not qualify as violent felonies under the ACCA's force clause". Civil Case No. 17-1759, Docket No. 1 at 18. Specifically, Petitioner argues that: (1) Puerto Rico's murder can be accomplished by omission and reckless behavior and does not require specific intent to kill; (2) the conviction may rest on a theory of non-violent behavior; and (3) "the Commonwealth of Puerto Rico prosecuted non-violent conduct such as aiding and abetting murder, instigating murder, procuring murder, and accessory before the fact to murder, indistinctly form the substantive offense". *Id*. at 18.

As correctly identified by Petitioner, at the time of his conviction, the Puerto Rico Penal Code defined murder as "the killing of a human being with malice aforethought." P.R. Laws Ann. tit. 33, § 4001 (repealed June 18, 2004); *see*, *also*, Pueblo v. Lucret Quiñones, 11 P.R. Offic. Trans. 904, 927, 929 (1981). As to what constitutes a first-degree murder, the Puerto Rico Penal Code established that it was defined as:

> (A) Any murder which is perpetrated by means of *poison*, lying in wait or torture or any willful, deliberate, and premeditated killing of which is committed in the preparation, or attempt to perpetrate, arson, rape, sodomy, robbery, robbery of a motor vehicle, burglary, kidnapping, destruction, mayhem or escape constitutes murder in the first degree.
>
> (B) The death of a member of the Police Force or of a Penal Guard who is in performance of his duties, which is caused as a result of the commission or intent to commit a felony or the concealment of it.

P.R. Laws Ann. tit. 33 § 4002 (repealed June 18, 2004). Furthermore, the Puerto Rico Penal Code stated that "[a]ll other murders shall be deemed as second-degree murders." *Id*. To that end, second-degree murder is "any unlawful killing with malice aforethought that is not first-degree murder." United States v. Baez-Martinez, 258 F. Supp. 3d 228, 232 (D.P.R. 2017).

Recently, the First Circuit ruled that convictions for second-degree murder and attempted murder, pursuant to the Puerto Rico Penal Code applicable to Petitioner's convictions, constitute "violent felonies" under the ACCA. *See* United States v. Baez-Martinez, 950 F.3d 119, 124 (1st Cir. 2020). [13] Hence, Petitioner's separate convictions for attempted murder and second-degree murder undoubtedly count as previous convictions for purposes of qualifying him as an Armed Career Criminal pursuant to the ACCA.

### ii. *Petitioner's conviction for robbery of a vehicle pursuant to Puerto Rico Law.*

Finally, the *Presentence Report* also evinces that Petitioner was previously charged and convicted on various occasions for armed carjacking's in violation of Article 173-B of the Puerto Rico Penal Code. *See* Criminal Case No. 99-385, Docket No. 66 at ¶¶ 64-65; Civil Case No. 17-1759, Docket No. 10-4 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. KPD97G1426). As to said convictions, Petitioner contends that robbery under Article 173-B of Puerto Rico's Penal code "does not categorically qualify as a violent felony". Case No. 17-1759, Docket 1 at 15.

---

[13] The Court notes that the First Circuit has yet to decide whether Puerto Rico's Penal Code general murder or murder in the first-degree constitute "violent felonies" for purposes of satisfying the ACCA's three-predicate-felony rule. However, since Petitioner's other convictions for attempted murder and second-degree murder suffice for purposes of determining his qualification as an Armed Career Criminal; it is unnecessary for the Court to determine whether his murder convictions constitute "violent felonies" pursuant to the ACCA. However, the Court notes that other Judges of this District Court have, in fact, concluded that Puerto Rico's general murder does qualify as a "violent felony" under the ACCA. *See*, *e.g.*, Hernandez-Favale v. United States, 2018 WL 3490797, at *2 (D.P.R. July 18, 2018).

In an attempt to substantiate his contention, Petitioner notes that Puerto Rico's Supreme Court has not discussed whether the robbery of a vehicle pursuant to Article 173-B Puerto Rico's Penal Code has an element of "violence" or "violence force". Consequently, Petitioner invites the Court to source Puerto Rico's case law as to the interpretation of the elements that constitute Puerto Rico's general robbery. To that end, Petitioner argues that "Puerto Rico robbery can be committed through the use of 'slight force' or by instilling fear of harm to someone's property. Robbery of a vehicle requires the same amount of physical force, or lack thereof". Civil Case No. 17-1759, Docket No. 1 at 15. Further, Petitioner references Ninth Circuit case law, specifically *United States v. Parnell*, 818 F.3d 974, 980-981 (9th Cir. 2016), for the proposition that Article 173-B's requirement of the use of a deadly weapon is not dispositive for purposes of the analysis.[14]

At the time of his conviction, Puerto Rico's Penal Code established that a robbery was defined as

> Every person who unlawfully appropriates for himself personal property belonging to another, whether taking them from his person or from the person having possession thereof, or in his immediate presence and against his will, by means of violence of intimidation, shall be punishable.

P.R. Laws Ann. Tit 33, § 4279. On the other hand, the robbery of a vehicle as defined by Article 173 (B) of the Puerto Rico Penal Code, required the aforementioned elements for robbery under Article 173 and added two elements, which were: (1) **the use of an object capable of causing grave bodily injury**, and (2) the taking of a motor vehicle. *See* P.R. Laws Ann. tit. 33, § 4279b

---

[14] The Court finds that *Parnell* is inapposite to substantiate Petitioner's argument since said case dealt with a Massachusetts armed robbery statute that did not require **the use** of an "object capable of causing grave bodily injury" as a necessary element of the crime. *See* United States v. Parnell, 818 F.3d 974, 980 (9th Cir. 2016) ("There is a material difference between the presence of a weapon, which produces a risk of violent force, and the actual or threatened use of such force. Only the latter falls within ACCA's force clause.") On the contrary, as previously explained, Puerto Rico's robbery of a vehicle establishes **the use** of "an object capable of causing grave bodily injury" as an element of the crime. P.R. Laws Ann. Tit 33, § 4279 (repealed June 18, 2004).

15

(repealed June 18, 2004). Therefore, "the carjacking statute in Article 173-B enhances the robbery statute in Article 173 by adding a deadly or dangerous weapon element to the crime." Rodriguez-Mendez v. United States, 2020 WL 1181980, at *3 (D.P.R. Mar. 11, 2020).

In its *Opposition*, the Government contends that the required use of a deadly weapon as an element of the crime, "satisfies the requirement of use of force or threatened use of force". Case No. 17-1759, Docket No. 10 at 10. To support its contention, the Government relies on a First Circuit precedent in *United States v. Taylor*, where the Circuit Court determined that "the element of a dangerous weapon imports the 'violent force' required by Johnson into the otherwise overbroad simple assault statute." Taylor, 848 F.3d at 494.

The Court agrees with the Government's contention and applies the First Circuit's reasoning in *Taylor*. The Court finds that the inclusion of the **use** of "an object capable of causing grave bodily injury" as an element to Article 173-B, makes Puerto Rico's robbery of a vehicle statute "fall[] within the meaning of a "violent felony" pursuant to 18 U.S.C. 924(e)(2)(B)(i)". Hernandez-Favale v. United States, 2018 WL 3490797, at *4 (D.P.R. July 18, 2018); *see*, *also*, Rodriguez-Mendez v. United States, *supra*; Rojas-Tapia v. United States, 2020 WL 2096153 (D.P.R. May 1, 2020). To that end, Petitioners convictions under Puerto Rico's Penal Code for the robbery of a vehicle count as previous convictions for purposes of qualifying him as an Armed Career Criminal pursuant to the ACCA.

Pursuant to the above, Petitioner's past criminal record under Puerto Rico law has one (1) serious drug offence and, at least, two (2) additional convictions that qualify as "violent felonies" under the force clause of the ACCA.[15] Consequently, the Court finds that Petitioner has, at least,

---

[15] Specifically, as previously discussed, Petitioner was convicted for violating Article 401 of Puerto Rico's Controlled Substances Law. *See* Criminal Case No. 99-385, Docket No. 66 at ¶ 61, Civil Case No. 17-1759, Docket No. 10-1 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. FSC96G0365). Also, Petitioner was convicted under Article 83 of Puerto Rico's Penal Code, with the murder of a police officer and four attempted

three (3) prior convictions that qualify him as an Armed Career Criminal under the ACCA; therefore, his *Motion to Vacate* is **DENIED** on said grounds.

### D. <u>Petitioner's increased base offense level under previous Sentencing Guidelines.</u>

Finally, Petitioner argues that *Johnson II* also invalidated the residual clause of the Career Offender guideline. Consequently, Petitioner contends that he no longer qualifies for the enhanced base offense level of 26, under USSG § 2K2.1(a)(1), since "absent the residual clause, his prior convictions are no longer 'crimes of violence'". Case No. 17-1759, Docket No. 1 at 31.

Neither the Supreme Court nor the First Circuit have determined whether defendants sentenced prior to *United States v. Booker*, 543 U.S. 220 (2005), "may mount vagueness attacks on their sentences." <u>Beckles v. United States</u>, 137 S.Ct. 886, 903 n.4 (2017) (holding that, in light their advisory nature, the post Booker Sentencing Guidelines are not subject to due process vagueness challenges). However, the Court finds that it is unnecessary to make said determination in the instant case.

Ignoring the prior Career Offender guideline's residual clause, to qualify as career offender Petitioner had to have two prior felony convictions that qualify as a crime of violence under said Guideline's force clause or the numerated offenses clause. It is necessary to note that the First Circuit has ruled that "'the terms 'crime of violence' under the career offender Guideline and 'violent felony' under the ACCA are nearly identical in meaning, so that decisions construing one term inform the construction of the other.'" *See* <u>United States v. Dancy</u>, 640 F.3d 455, 466 n.9 (1st Cir. 2011). Consequently, pursuant to the discussion in Section C of this *Opinion and Order* it is

---

murders. *See* Criminal Case No. 99-385, Docket No. 66 at ¶ 64, Civil Case No. 17-1759 at Docket 10-2 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. KVI97G0094) and 10-3 (*Judgments* entered by the Court of First Instance of Puerto Rico for Criminal Cases Nos. KVI970090, KVI97G0091, KVI97G0092, KVI97G0093). Finally, Petitioner was convicted -on various occasions- for armed carjacking's in violation of Article 173-B of the Puerto Rico Penal Code. *See* Criminal Case No. 99-385, Docket No. 66 at ¶¶ 64-65; Civil Case No. 17-1759, Docket No. 10-4 (*Judgment* entered by the Court of First Instance of Puerto Rico for Criminal Case No. KPD97G1426).

clear that Petitioner had various prior convictions (*e.g.*, murder, second degree murder, attempted murder and armed carjacking) that constitute crimes of violence under ACCA;[16] hence the Court finds that said prior convictions pertaining to crimes of violence also qualify as crimes of violence pursuant to the Career Offender Guideline and therefore could have been used to satisfy the requirements for imposing the enhanced base offense level.

Therefore, Petitioners arguments as to this matter are also meritless.

### IV.    Conclusion

Pursuant to the above, the effects of *Johnson II* do not affect the validity of Petitioner's sentence and convictions in Criminal Case No. 99-309. Consequently, Petitioner's *Motion to Vacate* is hereby **DENIED**.

It is further ordered that no certificate of appealability be issued in the event that the petitioner files a notice of appeal because there is no substantial showing of the denial of a constitutional or statutory right within the meaning of 28 U.S.C. § 2253(c).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, on July 13, 2020.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge

---

[16] Furthermore, although not considered when making the analysis included in this *Opinion and Order*, the Court wished to note that Petitioner has -at least- six (6) prior convictions under Puerto Rico law for robbery in which said crime was committed while possessing and/or using a firearm. *See* Criminal Case No. 99-385, Docket No. 66 at ¶¶ 58-63 (*Judgments* entered by the Court of First Instance of Puerto Rico for Criminal Case No. G89-1975-91; G89-2668-69; G89-2547-49; FPD96G0798-800; FPD96G0794; and FPD96G0796).